[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS
This is an action for declaratory judgment under52-29 of the Connecticut General Statutes and Section 388 et seq. of the Connecticut Practice Book. This action arises from another action in which plaintiff has been charged with violations of environmental protection statutes. In the underlying action plaintiff allegedly discharged certain hazardous substances on its property in eight locations ("on-site claims") and allegedly generated or transported toxic waste at twenty-six other locations ("off-site claims"). Liability has been imposed against plaintiff without fault on a joint and several basis and further liability may be imposed.
Plaintiff has brought this declaratory judgment action against some 150 insurance carriers based on over 600 policies which plaintiff has entered into with these carriers over the years. Plaintiff seeks a determination as to the obligation of these carriers to defend and indemnify plaintiff in the underlying action. Defendants consist of both primary and excess insurers. Some excess insurers have moved for dismissal on the grounds that there is no justiciable issue as to them, and the court has recently denied that motion.
This litigation was initially filed in Massachusetts as part of an even larger action brought by plaintiff Carrier Corporation's parent corporation, United Technologies, in the Massachusetts Superior Court. The Massachusetts Court dismissed, on the grounds of forum non conveniens, the claims by Carrier Corporation. Carrier brought suit in Connecticut in early 1989, shortly after the dismissal by the Massachusetts court. While the plaintiff Carrier Corporation is not a Connecticut corporation, it is the wholly-owned subsidiary of CT Page 5209 the United Technologies Corporation, a corporation with significant contacts with the State of Connecticut. The defendant Travelers is also located in Connecticut, as are a considerable number of the other defendants.
The court is now faced with a motion to dismiss the case brought by Carrier from the Connecticut courts on the grounds of forum non conveniens. This motion is brought by less than ten percent of the defendants, and is opposed by most other defendants, and is vigorously opposed by plaintiff.
At first blush this case is strikingly similar to Union Carbide Corporation v. Aetna Casualty Surety Co.,212 Conn. 311 (1989). Indeed, perhaps the most striking difference between Union Carbide and the instant case is the previously recited fact that, in this case, the overwhelming majority of the litigants seem content to have Connecticut as the forum for this litigation. The court intends to deny the motion to dismiss on the grounds of forum non conveniens, and will explain that decision in the following analysis of private and public interest factors in accordance with the methodology suggested by Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839,91 L.ed. 1055 (1947). However, the court's discussion of this analysis will be considerably more brief than Judge Fuller's scholarly opinion in the trial court decision of Union Carbide Corporation v. Aetna C and S, Sup. Ct., Judicial District of Danbury, Docket No. 294989 (1989).
There is no question but that alternate fora exist for the litigation of this case, either on a fractionalized basis or on a consolidated basis. The New York courts would be able to obtain jurisdiction under long arm statutes and have several sites located within that state. It is not likely that there is another state where a consolidated piece of litigation would make much sense, although the other eight states beside New York which contain an underlying environmental site would, of course, have jurisdiction, at least for coverage issues arising out of activities within that state.
Courts invoke the doctrine of forum non conveniens with caution and only in exceptional circumstances that demonstrate both inconvenience and hardship. Sabino v. Ruffolo, 19 Conn. App. 402, 406. As a rule, when a court finds it has jurisdiction over a cause of action, it has both the right and the duty to exercise that power. Id., at 45. The common law doctrine of forum non conveniens is an exception to the general rule that a court must hear and decide cases over which it has jurisdiction by statute or constitution and recognizes the discretion of a court, in some few instances CT Page 5210 where jurisdiction and venue are proper, to dismiss a suit because the court has determined that another forum is better suited to decide the issues involved (emphasis supplied). Id., at 405-406, citing Gulf Oil v. Gilbert, supra.
Whether an action should be dismissed for forum non conveniens is governed by the private and public interest factors outlined in Gulf Oil Corporation v. Gilbert, supra. "The ultimate inquiry on whether the common law doctrine of forum non conveniens should be applied is where the trial will best serve the convenience of the parties and the ends of justice." Coster v. Lumbermen's Mutual, 330 U.S. 518, 527
(1947). The court analyzes the private interest factors to be overwhelmingly in favor of keeping the case in Connecticut. The relative ease of access to sources of proof would be slightly, but only slightly better in a consolidated litigation in New York, and the court is convinced that deposition procedures throughout the continental United States effectively make the availability of compulsory process and the cost of obtaining the attendance of willing witnesses to be neutral when comparing Connecticut to any other consolidated litigation forum. If the above-mentioned factors are analyzed on a site specific basis, of course, the fractionalized litigation would provide a marginal advantage in obtaining testimony with respect to site specific factual issues, but testimony (if any) about the circumstances of the insurance policies themselves would be less convenient in any forum but Connecticut, particularly in "The Insurance City." The court is of the opinion that the likelihood of a view of the various sites is so remote as to not be a significant factor. The court is convinced that judgment enforceability will not be affected by forum but the ultimate portion of the private interest factor analysis which drives the court's conclusion as to Connecticut as the sensible choice is that consolidated litigation in a case of this nature is considerably more easy, expeditious and inexpensive and will produce a fairer proceeding. The court also finds that the choice of forum by the plaintiff is not remotely vexatious nor is there a scintilla of evidence that harassment or oppression of these few defendants is at issue in the forum choice by plaintiff. Plaintiff (and some ninety percent of the defendants) wish to have the case litigated in the state of Connecticut. In this fact pattern, there is little difference, in the opinion of this court, between granting a forum non conveniens dismissal suo moto, and granting the motion of the defendants before this court now.
There is no question, however, that it is tempting indeed to pass a piece of litigation which will be a burden to the court system in Connecticut onto another state. As will be developed somewhat more fully in the discussion of the public CT Page 5211 interest factors later in this opinion, the court considers that temptation as one to be avoided in favor of duty.
The public interest factors include court congestion, the advantage of having a court familiar with the law of the state which is going to be applied determine the merits of the controversy whether the jury duty burden on a community with less relationship to the litigation is appropriate; the desirability of holding the trial in the view of interested persons; and the desirability of having matters decided in the local forum.
A fringe benefit (perhaps the only fringe benefit) of this decision being filed such an extraordinarily long time after the court took the matter under advisement, (a delay for which the court apologizes), is that the court has seen discovery proceed with rather impressive smoothness through the first stage of a case management order entered by agreement of the parties (including the moving defendants). While it would be nothing more than childish optimism to decide this motion on the assumption that counsel will probably stipulate to facts and submit the matter to a judge for determination on the legal questions of coverage, the court does not feel compelled to analyze the public interest factors in a "worst case scenario." Obviously that scenario would be a long and protracted jury trial, since a party would be entitled under Connecticut law to a jury determination of some disputed facts, at least in some of the possible scenarios in this case. It is at least equally likely, however, that this case will not be claimed to a jury by any party. There may well be issues as to the law of other jurisdictions as it impacts on policy coverage, but the issue in this case is one of coverage of a corporate insured, and not the issue of damages flowing from the events which occurred on the various sites scattered about the United States. It is a far different thing to consolidate damage claims from around the country brought by individual claimants than it is to consolidate the question of coverage for what are potentially enormous losses. Indeed, since the ultimate resolution of the issues in this case may be more relevant to the survival (or at least health) of Connecticut corporations (including insurance companies) Connecticut may have more interest in this case than the citizens living in the area of the Northside Landfill site in Zionsville, Indiana or the neighbors of the Carrier plant in Collierville, Tennessee (for example).
Thus, it is the conclusion of the court that the public interest factors weigh at least equally with respect to Connecticut as a forum for this litigation. To be sure, the case will impose a significant burden on Connecticut's overburdened courts. The court intends to have extensive CT Page 5212 hearings in August and enter a second case management order no later than the end of August 1991 and is confident that all disclosure issues in the first stage of discovery should be resolved within a reasonably short time.
While the court is not prepared to hold that Article 1, Section 10 of the Connecticut Constitution necessarily applies to a foreign corporation, such as the plaintiff, the court does note that states do bear the ultimate responsibility for providing their own citizens with a forum in which to resolve their differences, and, as a rule, state courts should be more reluctant than federal courts to invoke such a doctrine as forum non conveniens.
"The overriding inquiry in a forum non conveniens motion is not whether some other forum might be a good one or even a better one than the plaintiff's chosen forum. The question to be answered is whether plaintiff's chosen forum is itself inappropriate or unfair because of the various private and public interest considerations involved. Picketts v. International Playtex, Inc., 215 Conn. 490, 501.
Although unnecessary to the resolution of this opinion, the court also undertook an analysis of this issue in accordance with the twenty-five "California factors" as referred to in Hemmelgarn v. Boeing Company, 106 Cal.App. 3rd 576,165 Cal.Rptr. 190 (1980). On that analysis as well, which will not be articulated in this opinion, the court concludes that the motion to dismiss should be denied.
The Motion to Dismiss is denied.
KOLETSKY, J.